| | |
|---|---|
| JOSE VELAZQUEZ, <br><br> Plaintiff, <br><br> v. <br><br> TERRENCE WILLIAMS; DR. LOUIS SHICKEL; DR. ARTHUR DAVIDA, WEXFORD HEALTH SOURCES, INC., an Illinois corporation, and JOHN DOES 1-20 IN THEIR INDIVIDUAL CAPACITIES, <br><br> Defendants. | No. 14 CV 9121 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jose Velazquez alleges that the defendants: (1) were deliberately indifferent to his serious medical needs while incarcerated at Stateville Correctional Center, in violation of the Illinois and federal constitutions; and (2) denied him medical treatment because of his disability, in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. *See* R. 27. The defendants have moved to dismiss Velazquez's Second Amended Complaint for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the defendants' motion in part, and denies it in part.

BACKGROUND

Defendants Tarry Williams (Stateville's warden) and Dr. Louis Shicker (Stateville's Medical Director) are employees of the Illinois Department of Corrections ("IDOC"). *See* R. 27 ¶ 4.[1] Defendant Dr. Arthur Davida is a doctor employed by defendant Wexford Health Sources, Inc., which has a contract with the state to provide medical services for prisoners at Stateville. *Id.* ¶ 5.

Velazquez is currently an inmate at Lincoln Correctional Center, in Lincoln, Illinois. *Id.* ¶ 3. At Lincoln, Velazquez receives various medications to treat his severe anxiety, bipolar disorder, "pain from a serious injury and nerve damage," and diabetes. *Id.* ¶ 9. On or about July 23, 2014, IDOC temporarily transferred Velazquez to Stateville to attend court appearances. *Id.* ¶ 10. Upon arriving at Stateville, he was given insulin for his diabetes, but denied access to "other medications and treatment" that had been regularly administered to him at Lincoln. *Id.* ¶ 11. These included pain and psychotropic medication, as well as a "special diet." *Id.* Velazquez alleges that the defendants knew or should have known about the medications provided to him at Lincoln because that information was included in his medical files, "which follow [him] from facility to facility." *Id.* ¶ 12. He further alleges that he asked the defendants for "his medication, special diet,

---

[1] The defendants cite IDOC's website for Shicker's and Williams's job titles. *See* R. 30-1 at 1 n.1 (Williams); R. 48 at 2 n.1 (Shicker). For purposes of the defendants' motion, the Court takes judicial notice of their positions at Stateville. *See Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015) ("As a general rule, we may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6)."). Evidently, plaintiff also misspelled Shicker's name in the case caption ("Shickel").

and medical attention," but did receive any medical attention for two to three weeks after his arrival. *Id.* ¶ 13.

Velazquez was first seen by Dr. Davida, who prescribed "some medications," but denied Velazquez's request for pain medication and for "the psychotropic medication with which he was being successfully treated at Lincoln." *Id.* ¶ 15. Approximately five weeks after his transfer to Stateville, Velazquez saw a psychiatrist who prescribed Ritalin instead of the psychotropic medications he had been receiving at Lincoln. *Id.* He never received his "special diet." *Id.* ¶ 16. He further alleges that he developed "severe boils, respiratory distress, foot fungus, and other medical conditions" due to Stateville's unsanitary conditions. *Id.* ¶ 17. The defendants refused Velazquez's requests for treatment in connection with these conditions, "including a five day denial of treatment for ruptured boils." *Id.* ¶ 18.[2] Velazquez alleges on information and belief that the defendants have a policy and practice of not administering psychotropic medication to temporary inmates, notwithstanding the fact that they receive those medications at their "home" facility. *Id.* ¶¶ 22-23.

Velazquez's five-count complaint asserts claims against the defendants for: damages under § 1983 for violations of the Eighth Amendment (Count I);[3] violations

---

[2] Velazquez also alleges that the defendants denied three grievances that he filed, although he has not alleged the content of those grievances. *See* R. 27 ¶ 20.

[3] Velazquez cites the Fourteenth Amendment as the constitutional basis for his § 1983 claim. R. 27 at 4. After conviction, however, an incarcerated individual's rights

of the due process clause of the Illinois Constitution (Count II); damages against Wexford under § 1983 pursuant to *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978) (Count III); violations of the Americans with Disabilities Act ("ADA") (Count IV); and violations of the Rehabilitation Act (Count V).

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In

---

derive from the Eighth Amendment. *Lopez v. City of Chicago*, 464 F.3d 711, 718 (7th Cir. 2006).

applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

ANALYSIS

I. **Deliberate Indifference (Count I)**

A. **Defendants Shicker and Williams**

Velazquez has not alleged that defendants Shicker and Williams committed any particular action that prevented him from receiving adequate medical care. "The Eighth Amendment, applicable to the states through the Due Process Clause of the Fourteenth Amendment, protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,' *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), including . . . grossly inadequate medical care, *see Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). In order to state a claim for damages under § 1983 for inadequate medical care, Velazquez must show that he suffers from an "objectively serious medical condition" and that the defendants "knew about his condition and the risk it posed, but disregarded the risk." *Id.* at 409. He must further show that the defendants were "personally responsible for the deprivation of the constitutional right." *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).

Velazquez's complaint generically alleges that the "Defendants" did not give him proper medication and treatment. *See, e.g.*, R. 27 ¶ 21 ("Plaintiff was never given proper medical treatment by Defendants while housed at Stateville . . . ."). He asks the Court to construe the term "Defendants" "to concern the individual actions

or participation of the individual defendant(s)." R. 46 at 4-5. But it is implausible to suppose that Shicker and Williams directly participated in each action (or omission) that Velazquez is challenging. *See Steidl v. Gramley*, 151 F. 3d 739, 741-42 (7th Cir. 1998) ("For the purposes of a motion to dismiss, a warden cannot be assumed to be directly involved in the prison's day to day operations"); *Neely v. Randle*, No. 12 C 2231, 2013 WL 3321451, at *3 (N.D. Ill. June 29, 2013) (The plaintiff's allegation that the medical director "had overall responsibility for medical care at Stateville is insufficient without more to amount to a plausible allegation of her personal involvement, let alone conscious disregard of a risk to [the plaintiff's] health."). The mere fact that Shicker and Williams held positions of authority at the prison where Velazquez alleges he was injured is insufficient to state a claim against them. *See Matthews*, 675 F.3d at 708. ("To show personal involvement, the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.") (citation and internal quotation marks omitted).

Even if the Court assumed that Shicker and Williams were aware that Velazquez had filed grievances, his complaint would still be deficient. First, "[f]or written notice to prison administrators to form the basis of a deliberate indifference claim, the plaintiff 'must demonstrate that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety.'" *See Hardy v. Wexford Health Sources, Inc.*, No. 12 C 6554, 2015 WL 1593597, at *8 (N.D. Ill. Apr. 2, 2015) (quoting *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011)). Velazquez has not

alleged the content of his grievances, so it is unclear whether they would have alerted the defendants to his condition. Second, the mere mishandling of the grievance process is insufficient to plead deliberate indifference. *See Owens v. Hinsley*, 635 F. 3d 950, 953 (7th Cir. 2011) ("the alleged mishandling of [plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim"); *Neely*, 2013 WL 3321451, at *3 ("Neely alleges no actual involvement by the wardens in his medical care other than by dealing with, or allegedly ignoring, his grievances. This is insufficient to state a claim against them."). Thus, the Court concludes that Velazquez has failed to state a claim for relief against defendants Williams and Shicker.

B.    **Defendant Davida**

Plaintiff has, however, stated a § 1983 claim against Dr. Davida. To assert deliberate indifference by prison medical staff, the question is "whether the official knew of and disregarded an excessive risk to the inmate's health, not whether the inmate was ignored." *Sherrod v. Lingle*, 223 F. 3d 605, 613 (7th Cir. 2000). Velazquez alleges that Dr. Davida denied his request for the pain and psychotropic medications that were given to him at Lincoln, and that were contained in his medical records. R. 27 ¶¶ 11-12, 14. This is sufficient to state a plausible claim for relief based upon deliberate indifference. *Arnett*, 658 F.3d at 752-753 ("Allegations of refusal to provide an inmate with prescribed medication . . . can state an Eighth Amendment claim."); *see Nunez v. Spiller*, Case No. 15–cv–00514–SMY, 2015 WL 3419513, at *2 (S.D. Ill. May 28, 2015) (plaintiff stated a claim for deliberate

indifference by alleging that the defendant "deprived him of treatment prescribed by other physicians and that he was denied corrective treatment when his condition worsened").

In sum, the Court grants the defendants' motion to dismiss Count I with respect to Williams and Shicker, and denies the motion as to Dr. Davida.

## II. Illinois Constitutional Claim (Count II)

After some initial confusion, Velazquez has clarified that he alleges in Count II that the defendants violated the due process clause of the Illinois Constitution. R. 46 at 5-6; *see* Ill. Const., Art. I, § 2 ("No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."). Velazquez, however, has not cited any authority recognizing a private right of action under Illinois's due process clause. Moreover, "where state common law or federal law provides an adequate remedy to a plaintiff . . . a plaintiff may not maintain an independent cause of action under the Illinois Constitution." *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 862 (N.D. Ill. 2010) (collecting cases); *see also White v. Madison Cnty. Ill.*, No. 07-CV-716-MJR, 2008 WL 539230, at *6 (S.D. Ill. Feb. 26, 2008). A claim for damages under § 1983 for violations of the federal constitution is an adequate remedy. *See White*, 2008 WL 539230, at *5-6 (dismissing claims under the Illinois Constitution (including Article I, § 2) because § 1983 provided an adequate remedy); *Ingram v. Jones*, No. 95 C 2631, 1995 WL 745849, at *4 (N.D. Ill. Nov. 29, 1995) (similar). Thus, the Court dismisses Count II with prejudice.

## III.    *Monell* Liability (Count III)

Plaintiff has also failed to state a claim for *Monell* liability against Wexford. Although it is a private corporation, Wexford is potentially liable under § 1983 for actions taken pursuant to its contract with the state. *See Rice v. Correctional Med. Servs. of Ill., Inc.*, 675 F.3d 650, 675 (7th Cir. 2012) ("Private corporations acting under color of state law may . . . be held liable for injuries resulting from their policies and practices"). Like municipal corporations, however, Wexford cannot be held liable under *respondeat superior* for the constitutional violations of its agents. *See Kinslow v. Pullara*, 538 F. 3d 687, 692 (7th Cir. 2008) ("[plaintiff's] theory … relies on principles of *respondeat superior* and vicarious liability, but neither one applies to claims based on § 1983"). To state a claim for relief against Wexford, Velazquez must "'plead factual content that allows the court to draw the reasonable inference' that the [defendant] maintained a policy, custom, or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

Velazquez alleges in a conclusory fashion that "Wexford has a policy and practice of denying psychotropic medicines to mentally disabled inmates who are transferred temporarily to" Stateville. R. 27 ¶ 27. As currently alleged, there is nothing about Velazquez's personal experience that plausibly suggests that Dr. Davida (or the unidentified psychiatrist who prescribed him Ritalin, *see id.* ¶ 15) were acting pursuant to Wexford's policy, custom, or practice. *See Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) ("[I]t is necessarily more difficult for a

plaintiff to demonstrate an official policy or custom based only on his own experience because what is needed is evidence that there is a true municipal policy at issue, not a random event."); *see also Hardy*, 2015 WL 1593597, at *15 ("[C]ourts in this district generally dismiss *Monell* claims in which '[a]ll of the allegations in the Complaint pertain exclusively to [the plaintiff].'" (quoting *Davis v. Metro. Pier & Expo. Auth.*, No. 11 C 9018, 2012 WL 2576356, at *12 (N.D. Ill. July 3, 2012))). The Court dismisses Count III without prejudice.

## IV. ADA and Rehabilitation Act (Counts IV and V)

In his response to defendants' motion to dismiss, Velazquez "concedes that individual employees of the IDOC are not amenable to suit under the Rehabilitaiton Act or the ADA." *See* R. 46 at 7. Thus, Counts IV and V are dismissed with prejudice as to Shicker and Williams.

With respect to Davida and Wexford, Velazquez alleges that "[s]olely by reason of his disability which requires a regimen of psychotropic medication, Defendants denied Plaintiff the benefits of the medical care he was entitled to receive when he was transferred to Stateville." R. 27 ¶ 33. A defendant does not violate the ADA and the Rehabilitation Act by "simply failing to attend to the medical needs of its disabled prisoners." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *see also Estate of Crandall v. Godinez*, Case No. 14–cv–1401, 2015 WL 1539017, at *7 (C.D. Ill. Mar. 31, 2015) ("This claim—that [plaintiff] was not properly treated for his mental illness—is distinctly different from a claim that Crandall was denied access to medical services, and is not cognizable under the

ADA."); *Jordan v. Tilden*, Case No. 15–1028, 2015 WL 1424338, at *3 (C.D. Ill. Mar. 26, 2015) ("[O]nce Plaintiff was provided medical services, the manner in which his treatment was administered does not create a claim under the ADA."). Velazquez has not alleged that he was treated worse than other inmates because he is disabled. *See Bryant*, 84 F.3d at 249 ("No discrimination is alleged; Bryant was not treated worse because he was disabled."). Rather, he alleges that the defendants did not provide psychotropic medication in a timely fashion, and when it was prescribed, it was not the right medication. R. 30 5-6. Counts IV and V of Velazquez's complaint are dismissed without prejudice.

## Conclusion

Defendants' motion to dismiss, R. 29, is denied in part and granted in part. The motion is denied as to Count I against defendant Davida. Otherwise, the motion is granted. Count II is dismissed with prejudice, and Counts IV and V are dismissed with prejudice as to defendants Williams and Shicker. The other dismissed counts are dismissed without prejudice. Velazquez is given leave to file an amended complaint by July 21, 2015, if he believes that he can correct the deficiencies the Court has identified. The Court sets a status hearing for July 30, 2015 at 9:00 a.m. The status hearing scheduled for July 2, 2015 is stricken.

ENTERED:

*Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: June 30, 2015