UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSE VELAZQUEZ,

    Plaintiff,

v.

TERRENCE WILLIAMS; DR. ARTHUR DAVIDA, WEXFORD HEALTH SOURCES, INC., an Illinois corporation, and JOHN DOES 1-20 IN THEIR INDIVIDUAL CAPACITIES,

    Defendants.

No. 14 CV 9121

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Plaintiff Jose Velazquez has sued defendants Tarry Williams (incorrectly identified as Terrence Williams), Dr. Arthur Davida, and Wexford Health Sources, Inc. for alleged deliberate indifference to his serious medical needs and, as to Davida and Wexford, disability discrimination. R. 50. On June 30, 2015, the Court granted the defendants' motions to dismiss in part, and denied them in part. R. 49. With the Court's leave, Velazquez filed a third amended complaint on July 20, 2015. R. 50. His new complaint itself is substantially similar to his prior complaint. Velazquez has, however, attached two grievance forms that he submitted to personnel at Stateville Correctional Center. R. 50-1.[1] The defendants have moved to

---

[1] The Court may take into account materials attached to plaintiff's complaint in ruling on defendants' motions to dismiss. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and N.W. Ind.*, 786 F.3d 510, 528 (7th Cir. 2015) ("In

dismiss the third amended complaint for failure to state a claim, arguing that it suffers from the same defects as the prior complaint. Rs. 53 and 56. For the following reasons, the Court: (1) denies Williams's motion;[2] and (2) grants in part, and denies in part, Davida and Wexford's motion.

## BACKGROUND

On or about July 23, 2014, the Illinois Department of Corrections (IDOC) temporarily transferred Velazquez from Lincoln Correctional Center to Stateville to attend court appearances. R. 50 ¶ 10. While at Lincoln, Velazquez received various medications to treat his diabetes, severe anxiety, bipolar disorder, "pain from a serious injury and nerve damage," and ulcers. *Id.* ¶ 9; *see also* R. 50-1 at 5 (Ill. Dept. of Corrections Offender's Grievance, dated Aug. 6, 2014). These medications included Paxil, Remeron, Trazodone, Ibuprofen 800 mg, and Neurotin 600 mg. R. 50 ¶ 9. He also received "low soy kosher" meals to ameliorate his ulcers and "stomach issues." *Id.* ¶¶ 9, 11; R. 50-1 at 5.

---

evaluating the sufficiency of a complaint, the court may . . . consider documents attached to the pleading without converting the motion into one for summary judgment.") (citation and internal quotation marks omitted).

[2] Former defendant Louis Shicker, Stateville's Medical Director, joined Williams's motion because it was unclear whether the third amended complaint named him as a defendant. *See* 54 at 3-4 (pointing out that Velazquez has dropped Shicker from the case caption, but still includes him in the "Parties" section of the third amended complaint). The Court previously granted Shicker's motion to dismiss Velazquez's deliberate indifference claim without prejudice. *See* R. 49 at 11. Velazquez has now clarified that he no longer seeks any relief from him. *See* R. 61 at 1-2. So, the Court dismisses Velazquez's deliberate indifference claim against Shicker with prejudice.

2

Upon arriving at Stateville, Velazquez received insulin for his diabetes, but did not receive the other medications that had been regularly administered to him at Lincoln. *Id.* ¶¶ 9, 11. Velazquez alleges that the defendants knew or should have known about his prescribed medications because that information was included in his medical files, "which follow [him] from facility to facility." *Id.* ¶ 12. Despite his repeated requests for his medications and to see a doctor, Velazquez did not receive any medical attention for two to three weeks after his arrival. *Id.* ¶ 13.

On August 6, 2014, Velazquez filed a grievance stating that he had been in "severe pain with [his] foot which is fractured and has bone spurs." R. 50-1 at 4. He further complained that there had been blood in his stool for a week, which he attributed to the fact that he was not receiving his special meals. *Id.* at 5. In order to alleviate his stomach issues, he had "eaten hardly any" of the food that he had been served at Stateville. *Id.* He expressed his concern that this might exacerbate his diabetes. *Id.* Since arriving at Stateville, Velazquez had "sent numerous request[s]" to doctors, nurses, and psychiatric counselors, "with no response." *Id.* Above his signature, Velazquez checked a box to indicate that his grievance was an emergency "due to a substantial risk of imminent personal injury." *Id.* at 4.

The grievance form appears to indicate that Stateville's warden, defendant Williams (or his designate), received Velazquez's grievance on August 21, 2014. *Id.* A week later, on August 28, 2014, Williams (or his designate) signed the "Emergency Review" section and checked a box indicating that "an emergency is not substantiated. Offender should submit this grievance in the normal manner." *Id.*

3

While his first grievance was pending, Velazquez filed another grievance. R. 50-1 at 6 (Ill. Dept. of Corrections Offender's Grievance, filed Aug. 18, 2014). He continued to have blood in his stools, had not received his psychotropic medications, and had not been seen by a doctor or psychiatrist. *Id*. at 6-7. He again checked the box on the form to indicate that his grievance was an emergency. *Id*. at 6. Williams (or his designate) signed the Emergency Review section on October 24, 2014, again indicating that the grievance was not an emergency. *Id*.

As the Court construes the complaint, Velazquez was first seen by a doctor—defendant Davida—shortly after he filed his second grievance. R. 50 ¶ 14. Davida prescribed "some medications for his medical conditions," but denied Velazquez's request for pain medication and for "the psychotropic medication with which he was being successfully treated at Lincoln." *Id*. Two to three more weeks passed before Velazquez was allowed to see a psychiatrist. *Id*. ¶ 15. The psychiatrist prescribed Ritalin instead of the medications he had been prescribed at Lincoln. *Id*.

Velazquez further alleges that he developed "severe boils, respiratory distress, foot fungus, and other medical conditions" due to Stateville's unsanitary conditions. *Id*. ¶ 17. The defendants refused Velazquez's requests for treatment in connection with these conditions, "including a five day denial of treatment for ruptured boils." *Id*. ¶ 18. He never received his special meals. *Id*. ¶ 16.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th

Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## ANALYSIS

In his third amended complaint, Velazquez has repled his deliberate indifference claims against Williams and Davida, and his Americans with Disabilities Act ("ADA") and Rehabilitation Act claims against Davida and Wexford.[3]

---

[3] Velazquez has also repled his due process claim under the Illinois Constitution to preserve his right to appeal the Court's order dismissing that claim

5

## I. Deliberate Indifference

### A. Davida

The Court previously denied Davida's motion to dismiss Velazquez's deliberate indifference claim, holding that the complaint sufficiently alleged that Davida had denied him medications that other physicians had prescribed. R. 49 at 7-8 (citing *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011) and *Nunez v. Spiller*, Case No. 15–cv–00514–SMY, 2015 WL 3419513, at *2 (S.D. Ill. May 28, 2015)). Without acknowledging the Court's prior order, Davida argues in his opening brief that Velazquez had not pled "any facts to show that Dr. Davida had plaintiff's medical records from Lincoln Correctional Center and knew that he was on certain psychotropic medications but failed to act on them." R. 56 at 3. It is a reasonable inference from the complaint that Davida did have Velazquez's medical records. *See* R. 50 ¶ 12 (alleging that the defendants knew or should have known about Velazquez's medical conditions because his medical records "follow [him] from facility to facility"). It is also reasonable to infer that Davida refused Velazquez's request for the medications that he had been receiving at Lincoln. *Id.* ¶ 14. In his reply brief, Davida argues that Velazquez pled himself out of court by alleging that Davida gave him "some medications for his medical conditions." R. 63 at 2; R. 50 ¶ 14. The Court infers from the complaint, however, that Davida failed to treat

---

with prejudice. R. 50 at 8. He has elected "at this time" not to replead his *Monell* claim against Wexford, *see id.* ¶ 30, which the Court previously dismissed without prejudice. The Court's deadline to amend that claim has passed. Velazquez's Illinois Constitution and *Monell* claims are dismissed with prejudice.

6

Velazquez's serious psychiatric conditions and the pain that he attributed to his fractured foot and to his ulcers.[4] *See Arnett*, 658 F.3d at 751 ("[A] prisoner [does not] need to show that he was literally ignored."). The Court declines to reconsider its prior ruling that Velazquez has stated a claim against Davida for deliberate indifference.

**B.    Williams**

The Court previously granted Williams's motion to dismiss Velazquez's deliberate indifference claim without prejudice. *See* R. 49 at 5-7. "For written notice to prison administrators to form the basis of a deliberate indifference claim, the plaintiff 'must demonstrate that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety.'" *See Hardy v. Wexford Health Sources, Inc.*, No. 12 C 6554, 2015 WL 1593597, at *8 (N.D. Ill. Apr. 2, 2015) (quoting *Arnett*. 658 F.3d at 755); *see also Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Velazquez's second amended complaint was deficient because it did not allege what he said in his grievances, nor did it indicate whether Williams had received them. R. 49 at 6-7.

Velazquez's third amended complaint remedies both deficiencies. His first grievance clearly describes his medical problems and states that he had not seen a medical doctor or psychiatrist despite "numerous" requests. *See Perez*, 792 F.3d at

---

[4]    It is unclear from the complaint whether Davida took any action to address the blood in Velazquez's stool.

7

782 ("The complaint alleges that the named defendants each obtained actual knowledge of Perez's objectively serious medical condition and inadequate medical care through Perez's coherent and highly detailed grievances and other correspondences."). Construing the complaint in the light most favorable to Velazquez, Williams received the grievance on August 21, 2014. Notwithstanding his knowledge of Velazquez's condition, Williams did not intervene to ensure that Velazquez received the medications and treatment that he needed. *See id.* (plaintiff "alleges that each of these officials failed to exercise his or her authority to intervene on Perez's behalf to rectify the situation, suggesting they either approved of or turned a blind eye to his allegedly unconstitutional treatment"). This is sufficient to state a deliberate indifference claim against Williams. *Id.*

## II. Velazquez's ADA and Rehabilitation Act Claims

Velazquez has withdrawn his ADA and Rehabilitation Act claims against Davida. *See* R. 60 at 2. He contends, however, that he has stated a claim for relief under those statutes against Wexford.

The Court previously dismissed Velazquez's disability discrimination claims because he had "not alleged that he was treated worse than other inmates because he is disabled." R. 49 at 10. Addressing the Court's prior holding, Velazquez points to his allegations that he received insulin to treat his diabetes, but had to wait five weeks to see a psychiatrist and never received at Stateville the psychotropic medications he had been prescribed at Lincoln. R. 60 at 4. According to Velazquez, this indicates that Wexford treated him differently because he is mentally disabled.

8

This argument is substantially similar to arguments that the Court has already rejected. Velazquez did not receive (at least initially) any psychotropic medication, *nor any pain medication*. *See* R. 50 ¶ 14. And he alleges that he never received his special diet to address his ulcers. *Id.* ¶ 16. These allegations simply do not support an inference of disability discrimination. Moreover, he did eventually receive medication to treat his mental conditions. *Id.* ¶ 15. He alleges that he received the wrong medication, *id.*, but that allegation does not support his discrimination claim. *See Estate of Crandall v. Godinez*, Case No. 14–cv–1401, 2015 WL 1539017, at *7 (C.D. Ill. Mar. 31, 2015) ("This claim—that [plaintiff] was not properly treated for his mental illness—is distinctly different from a claim that Crandall was denied access to medical services, and is not cognizable under the ADA."); *Jordan v. Tilden*, Case No. 15–1028, 2015 WL 1424338, at *3 (C.D. Ill. Mar. 26, 2015) ("[O]nce Plaintiff was provided medical services, the manner in which his treatment was administered does not create a claim under the ADA.").

By repeating arguments that the Court has already rejected, Velazquez effectively concedes that he cannot state a plausible claim for disability discrimination. Thus, the Court dismisses that claim with prejudice.

CONCLUSION

For the foregoing reasons, the Court grants in part, and denies in part, defendants' motions to dismiss, Rs. 53 and 54. The Court denies Davida's and Williams's motions to dismiss plaintiff's deliberate indifference claim. The Court grants Davida's and Wexford's motion to dismiss plaintiff's ADA and Rehabilitation

9

Act claims with prejudice. Velazquez has clarified that he no longer seeks any relief from Louis Shicker. Velazquez's deliberate indifference claim against Shicker, previously dismissed without prejudice, is now dismissed with prejudice. Finally, Velazquez's Illinois Constitution and *Monell* claims are dismissed with prejudice. The Court sets a status hearing for September 16, 2015 at 9:00 a.m.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: September 11, 2015