UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE VELAZQUEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 14 C 9121 |
| v. | ) |
| | ) |
| TERRENCE WILLIAMS, DR. ARTHUR DAVIDA, | ) |
| WEXFORD HEALTH SOURCES, INC., AND JOHN | ) |
| DOES 1-20, | ) Judge Thomas M. Durkin |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION & ORDER**

Plaintiff Jose Velazquez has sued defendants Tarry Williams (incorrectly identified as Terrence Williams), Dr. Arthur Davida, Wexford Health Sources, Inc., and John Does 1-20 for alleged deliberate indifference to plaintiff's serious medical needs while Velazquez was temporarily housed at Stateville Northern Reception and Classification Center between late-July and early-September 2014.

Currently pending before the Court are: (1) Defendant Tarry Williams's motion for summary judgment (R. 94); and (2) Defendants Dr. Arthur Davida and Wexford Health Services, Inc.'s motion for summary judgment (R. 97). For the reasons that follow, the Court grants both motions for summary judgment.

**Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

1

matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Analysis

### I. Dr. Davida and Wexford's Motion

#### A. Wexford

The parties agree that no pending claim remains against defendant Wexford. As plaintiff correctly explains, "Wexford has already been dismissed with prejudice as to all counts in the Third Amended Complaint in which any relief was requested of [Wexford]." R. 116 at 2.

The Court thus clarifies for the record that all claims against Wexford have been and are dismissed with prejudice.

#### B. Dr. Davida

The Court next turns to plaintiff's deliberate indifference claim against defendant Dr. Davida. As an initial matter, a plaintiff's failure to respond to a

defendant's argument on summary judgment results in waiver. *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016) (quotation marks omitted). Plaintiff in his opposition (R. 116) fails to respond to Dr. Davida's summary judgment arguments concerning: (1) Dr. Davida's treatment of plaintiff's boils; and (2) plaintiff's general medication regimen at Stateville. Plaintiff has thus waived these bases for his deliberate indifference claim.

In any event, even if not waived, summary judgment would be appropriate with respect to plaintiff's allegations regarding Dr. Davida's treatment of plaintiff's boils and his general medication regimen at Stateville. "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment deliberate indifference claim based on the medical treatment of a prisoner has two elements: "(1) [the plaintiff had] an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "To survive summary judgment" on a deliberate indifference claim, a plaintiff "need[s] to present evidence sufficient to show that [a doctor's] decision was so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016).

With respect to plaintiff's boils, plaintiff concedes in his response to Dr. Davida's statement of facts that Dr. Davida treated plaintiff's boils on August 18

3

and August 25, 2014 by cleaning them, prescribing antibiotics, ordering a culture, and examining plaintiff in a follow-up appointment. R. 117 ¶¶ 19-34. Plaintiff acknowledges that he "did not make any other complaints to Dr. Davida regarding his boils after August 25, 2014." *Id.* ¶ 34. And he concedes that the "medical treatment [he] received for his boils was in accordance with the standard of care." *Id.* ¶ 33. There is therefore no evidence that Dr. Davida's treatment of plaintiff's boils contravened "accepted professional standards," and summary judgment is appropriate. *See Whiting*, 839 F.3d at 664.

Turning to plaintiff's general medication regimen at Stateville, the only possible fact dispute in this case involves whether plaintiff's medical chart correctly reports that he was administered a mental health medication called Paxil each day at Stateville. *See* R. 117 ¶¶ 53-54. But plaintiff himself concedes that any such fact dispute is "irrelevant" because it is not the focus of his deliberate indifference claim. R. 116 at 5. And even if it was, plaintiff further concedes that Dr. Davida: (a) was not personally involved in distributing any of plaintiff's medications; and (b) is not a psychiatrist and did not prescribe any mental health medications for plaintiff at Stateville. R. 117 ¶¶ 53-58. There is thus no evidence in the record on which to find that Dr. Davida was subjectively indifferent with respect to plaintiff's general medication regimen at Stateville, including administration of the mental health medication Paxil.

Accordingly, even if any claim based on treatment of plaintiff's boils and plaintiff's medication regimen at Stateville was not waived, summary judgment would be appropriate on those claims.

Plaintiff's only remaining deliberate indifference allegations against Dr. Davida involve the treatment of plaintiff's left ankle pain. Plaintiff alleges that Dr. Davida failed to appropriately treat that pain, including by denying plaintiff's request to reinstate his prescription for the pain medication Neurontin.

The material facts relevant to this claim are undisputed. At Lincoln Correctional Center where he was previously housed, plaintiff was prescribed Neurontin to treat his left ankle pain following a fracture in 2011. But, as plaintiff acknowledges in his response to Dr. Davida's statement of facts, medical staff at Lincoln discontinued that prescription on August 10, 2014. R. 117 ¶¶ 39-40.

Plaintiff alleges in his affidavit filed in support of his statement of additional material facts that during a visit with Dr. Davida on an uncertain date, he complained about pain in his foot and asked Dr. Davida to reinstate his Neurontin prescription. R. 117-1 ¶ 8. As plaintiff concedes in his response to Dr. Davida's statement of facts, however, during a visit on August 25, 2014, Dr. Davida observed no swelling around plaintiff's left ankle. R. 117 ¶ 41. As plaintiff further acknowledges, Dr. Davida nevertheless ordered an x-ray and requested additional medical records from Lincoln based on plaintiff's reports of pain. *Id.* ¶ 42. Dr. Davida explains in his affidavit filed in response to plaintiff's statement of additional material facts that he preliminarily diagnosed plaintiff with mild joint

5

arthritis, for which Dr. Davida determined that the ibuprofen plaintiff was already receiving would be appropriate treatment. R. 126-1 at ¶¶ 24-27.

Plaintiff acknowledges that he was transferred away from Stateville less than two weeks later, on September 4, 2014. R. 117 ¶ 60. According to his medical records, plaintiff was not placed back on Neurontin at any time during the year after leaving Stateville. R. 126-2.

Like in *Whiting*, the record in this case "contains no evidence from which a jury could infer that" Dr. Davida "was subjectively indifferent" to plaintiff's left ankle pain. 839 F.3d at 664. In *Whiting*, the Seventh Circuit emphasized that even though the plaintiff submitted expert testimony in support of his claim, that testimony did not indicate that the doctor's "chosen course of treatment was a substantial departure from accepted medical judgment, and the decision was not so obviously wrong that a layperson could draw the required inference about the doctor's state of mind without expert testimony." *Id.* at 662-63.

Here, plaintiff has submitted *no* expert testimony in support of his claim, let alone expert testimony indicating that Dr. Davida departed in some way from accepted medical practice. And Dr. Davida's treatment was not "so obviously wrong that a layperson could draw" the inference that Dr. Davida was subjectively indifferent. *See id.* Dr. Davida did not make the decision to discontinue plaintiff's Neurotin prescription—that decision was made by medical professionals at Lincoln. And far from ignoring plaintiff's reported pain, Dr. Davida responded to plaintiff's pain by ordering an x-ray and additional records. The fact that plaintiff was not re-

6

prescribed Neurontin after his release from Stateville further confirms the appropriateness of Dr. Davida's treatment.

This case is nothing like the only case cited by plaintiff in either of his summary judgment response briefs, *Jones v. Simek*, 193 F.3d 485 (7th Cir. 1999). In *Jones*, the material facts were in serious dispute, and the plaintiff contended that a doctor waited nearly five months to arrange for him to see a specialist after learning of serious medical problems. *Id.* at 490-91. Here, by contrast, plaintiff was treated promptly and appropriately, and no material facts are disputed.

Plaintiff takes issue in his response (R. 116 at 2) with Stateville's response to a grievance he filed on August 6, 2014 that complained, among other things, about the pain in his foot. But he acknowledges in his response to Dr. Davida's statement of facts that inmate grievances are handled by other medical personnel at Stateville, and Dr. Davida does not ordinarily review such grievances. R. 117 ¶¶ 12 & 14. Accordingly, there is no evidence in the record on which to conclude that the contents of plaintiff's grievances bears on Dr. Davida's subjective response to plaintiff and his involvement in plaintiff's medical care.

Dr. Davida is thus entitled to summary judgment on plaintiff's deliberate indifference claim based on treatment of his left ankle pain.

## II. Williams's Motion

The Court next turns to the motion filed by defendant Williams (R. 94). Williams was the warden of Stateville during plaintiff's time there. Plaintiff claims that Williams was deliberately indifferent to his emergency grievances filed on

7

August 6, 2014 and August 18, 2014, which resulted in inappropriate treatment of his left ankle pain.

Based on the undisputed facts, the Court grants summary judgment on plaintiff's deliberate indifference claim against Williams for two independent reasons.

*First*, there is insufficient evidence of Williams's personal involvement to hold him liable. "[A warden] is not liable under the doctrine of deliberate indifference for simply serving in his administrative role." *E.g.*, *Foster v. Ghosh*, 2013 WL 3790905, at *4 (N.D. Ill. July 19, 2013) (collecting cases). The Seventh Circuit has affirmed summary judgment on a deliberate indifference complaint against a warden where there was "no evidence that [the warden] personally received or read" plaintiff's grievance "since he delegated the review of prisoner complaints to others within his office." *Jones v. Drew*, 221 F. App'x 450, 454 (7th Cir. 2007).

Plaintiff does not dispute in his response to Williams's statement of facts that Williams himself did not collect plaintiff's emergency grievances, receive or see those grievances, or determine that plaintiff's claims of emergency were not substantiated. R. 114 at ¶¶ 21-31. Those responsibilities were delegated to others within Williams's office. And plaintiff agrees that he never spoke to Williams regarding his grievances. *Id.* ¶ 27. In these circumstances, Williams lacks the personal involvement necessary to be held liable for deliberate indifference.

Plaintiff in his response does not meaningfully dispute that Williams was not personally involved or that this fact alone entitles Williams to summary judgment.

8

Instead, plaintiff claims that "[t]he requirement for personal involvement leaves a huge hole in cases where, as here, a systemic failure, rather than any conscious decision or action, leads to inmate injury." R. 113 at 3. But any systematic failure in the treatment of injuries at Stateville or gap in the law is not at issue in, or something the Court can address in, this motion.

Plaintiff also takes issue with the alleged undue delay in Stateville's handling of his first grievance. But the Seventh Circuit has rejected this very argument in the absence of evidence of personal involvement by a defendant in any underlying wrong. The Seventh Circuit in *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011), held that "the alleged mishandling of [a plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."

*Second*, and in any event, there is no evidence that Williams had "a sufficiently culpable state of mind." *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). In *Johnson*, the Seventh Circuit affirmed summary judgment for a prison warden on a deliberate indifference claim where there was no evidence "of woefully inadequate action evincing a sufficiently culpable state of mind," and the evidence instead showed that the warden "reasonably relied on the expertise of the medical professionals." *Id.* at 1011. The *Johnson* Court quoted the Third Circuit in *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004), for the proposition that "[h]olding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain the division of labor . . . . Accordingly, we conclude

9

that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Likewise in *Jones*, the Seventh Circuit held that a warden "is not liable for relying on the medical judgment of professionals." 221 F. App'x at 454.

In this case, plaintiff does not dispute that he was "under a physician's care"—namely, Dr. Davida's—during his time at Stateville. Moreover, plaintiff does not dispute in his response to Williams's statement of facts that he was seen by a nurse and had his vitals checked every day at Stateville. R. 114 ¶ 20. There is no evidence that Williams was given any reason to believe that the medical professionals were denying plaintiff proper treatment. Indeed, this Court has already rejected plaintiff's claims that he suffered deliberate indifference at the hands of Dr. Davida while at Stateville. Accordingly, Williams lacked the culpable state of mind required to be liable for deliberate indifference.

For each of these independently sufficient reasons—Williams's lack of personal involvement and lack of the requisite state of mind—the Court grants summary judgment on plaintiff's claim against Williams.

## Conclusion

For the foregoing reasons, the Court grants Defendants Davida and Wexford's motion for summary judgment (R. 97) and Defendant Williams's motion for summary judgment (R. 94).

Because plaintiff failed to identify John Does 1-20 before the close of discovery (and does not even name John Does 1-20 in the captions of their responses to the motions for summary judgment), the Court also dismisses John Does 1-20. *Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007); *Elder v. Dart*, 660 F. App'x 484 (7th Cir. 2016).

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: September 27, 2017